# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EURON MATTHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14 C 6003 |
| ) | |
| JAKE DEBUS, MICHAEL JANOVYAK, ) | |
| JASON PROKOP, OFFICER ADAMS, ) | |
| ALAN BECKMAN, THOMAS ) | |
| HANNON, and WILL COUNTY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Euron Matthews filed a *pro se* lawsuit under 42 U.S.C. § 1983 against a number of Will County Sheriff's police officers and the County. In his complaint, Matthews alleged the use of excessive force at the Will County Adult Detention Facility (the jail) following his arrest on August 4, 2013, as well as deliberate indifference to his need for medical care following the use of force.

Matthews also filed a separate *pro se* lawsuit against several officers and the County, alleging the use of excessive force in connection at the time of his arrest earlier on that same date. *Matthews v. Beckman*, Case No. 14 C 6002 (N.D. Ill.). That case was assigned to Judge Edmond Chang, who later appointed counsel to represent Matthews. Because of the potential connection between the two cases—specifically, the injuries Matthews claimed in each were potentially related—this Court asked the same attorney to represent Matthews in the present case. The attorney agreed and

later filed an amended complaint on Matthews' behalf. Still later, the attorney asked to withdraw from both cases. Judge Chang allowed the attorney to withdraw due to, among other things, significant disputes between Mr. Matthews and counsel. This Court later allowed counsel to withdraw for similar reasons. Mr. Matthews has proceeded *pro se* since that time.

The defendants have moved for summary judgment. Defendants Allan Beckman and Thomas Hannon, who were added to the case in January 2016, argue that the claims against them are barred by the two-year statute of limitations that governs section 1983 suits in Illinois and the shorter statute of limitations that governs claims under state law. All of the defendants argue that Matthews does not have evidence that would permit a reasonable jury to find in his favor against them on his claims of excessive force and denial of medical care.

Because the defendants have moved for summary judgment, the Court views the evidence in the light most favorable to Matthews, drawing reasonable inferences in his favor. *Horton v. Pobjecky*, ___ F.3d ___, 2018 WL 1061677, at *1 (7th Cir. Feb. 27, 2018). That said, almost all of the encounter between Matthews and the defendants at the jail is captured on video. "[W]hen video footage clearly contradicts the nonmovant's claims, [a court] may consider that video footage without favoring the nonmovant." *Id.* (citing *Scott v. Harris*, 550 U.S. 382, 378-81 (2007)).

The relevant events occurred when Matthews was taken to a nurse's office for an intake examination and then was taken to a holding cell. Matthews contends in his response to defendants' motion (Pl.'s Resp.), in his affidavit (Pl.'s Affid.) and in his deposition (Matthews Dep.) that:

2

- his head was shoved into the door in the nurse's office, Pl.'s Resp. at 2; Pl.'s Affid. at 2;

- he was yanked to the floor in the nurse's office even though he presented no threat to anyone, Pl.'s Resp. at 2;

- one of the defendants deliberately tripped him while taking him into the holding cell, Pl.'s Resp. at 3, and his head was slammed into the back wall of the cell, Matthews Dep. at 28, 31, 35-36, 39-40;

- he was assaulted while on the floor in the holding cell—specifically, he was punched and his leg was twisted, causing an injury to his knee, Pl.'s Resp. at 3; Pl.'s Affid. at 2-3;

- while he was on the floor of the holding cell, a taser was pointed at him and he was threatened with its use, even though he did not pose a threat to anyone, Pl.'s Resp. at 3-4; and

- although the nurse came into the holding cell while the defendants were attacking him, the defendants told her to leave, Pl.'s Resp. at 5.

The Court notes that at various points during his deposition, Matthews claimed that he lost consciousness for a brief period or periods after his head allegedly was shoved into the wall in the nurse's office. Contrary to defendants' suggestion, however, Matthews has not disclaimed all memory of these events.

Defendants have submitted affidavits from defendants Janovyak, Prokop, and Debus. They all assert that Matthews was verbally combative while in the nurse's office. Janovyak says that for this reason, he and Debus decided to take Matthews to a holding cell to cool off. Debus ordered Matthews to stand up and put his hands behind

3

his back. Matthews stood up but did not put his hands behind his back, so Janovyak and Debus each took one of Matthews' arms. As they began to move out of the room, Debus tripped and fell, and Matthews and Janovyak followed in a chain reaction. While on the floor, they ordered Matthews to put his hands behind his back, but he pulled his arms underneath him. They pried his arms from under his body and cuffed him behind his back. They then lifted him to his feet and walked him into the holding cell. Janovyak says that "[a]s we entered the cell, Matthews was ordered to get onto the floor and lie on his stomach but he did not comply. We tried to push him to his knees in the middle of the cell, but instead of going straight down, Matthews lunged toward the back wall of the cell." Janovyak Affid. ¶ 17. No one rammed Matthews into the cell wall or punched or kicked him, Janovyak says. They ordered Matthews to lie still, but he wriggled his body and tried to kick his legs. They held him on the floor until he stopped moving and then removed his handcuffs. During part of this period, Prokop pointed his taser at Matthews and told him not to move. Janovyak denies twisting or bending Matthews' legs or knees.

In his affidavit, Prokop says that as Janovyak, Debus, and Matthews were coming out of the nurse's station, he saw them fall onto the floor. Matthews did not hit his head. He helped secured Matthews' hands and get him to a standing position. As they entered the holding cell, he ordered Matthews to kneel and "placed his hand on the crown of Matthews' head to guide him down from a standing position to a kneeling position." Prokop Affid ¶ 12. Instead, however, Matthews lurched forward. No one rammed his head into the wall. They ordered Matthews to lie still on the floor and waited until he stopped moving before removing his handcuffs. To ensure that

4

Matthews complied while his cuffs were being removed, Prokop pointed his taser at Matthews and gave him a verbal warning that he would use it if Matthews did not lie still. Matthews complied. Neither he nor anyone else punched or kicked Matthews.

In his affidavit, Debus says that in the nurse's station, he ordered Matthews to stand up and put his hands behind his back. Matthews stood but did not put his hands behind his back. As he took Matthews' arm, Debus lost his balance, stumbled and fell, pulling Matthews with him. Matthews' head did not hit the floor, however. He and Janovyak restrained Matthews on the floor, and he resisted by pulling his arms toward his chest. Prokop and Janovyak pried his arms back and handcuffed him. No one punched or kicked Matthews. Debus is curiously silent about what happened in the holding cell; more on that in a bit.

The Court has also reviewed, multiple times, the video recordings submitted by defendants as part of their summary judgment materials.

1. **Claims against Beckman and Hannon**

The claims against defendants Beckman and Hannon are barred by the applicable statutes of limitations. Matthews' claims accrued, and the statute of limitations started to run, when he knew or should have known that his rights were violated, see, e.g., Washington v. Summerville, 127 F.3d 552, 556 (7th Cir. 1997), which in this case was on August 4, 2013. The clock ran out on Matthews' state law claims one year later, on August 4, 2014, and on his federal claims two years later, on August 4, 2015. Matthews did not add Beckman or Hannon to this suit until January 28, 2016. He offers no argument for why the statute of limitations should be tolled for any part of the intervening period, and there is no basis to find that the claims against these

defendants relate back to the date Matthews filed the lawsuit (these defendants were not on notice that claims might be made against them, and there was no case of mistaken identity). See Fed. R. Civ. P. 15(c)(1)(C). Beckman and Hannon are therefore entitled to entry of summary judgment in their favor.

**2.    Excessive force claims**

A claim of that a law enforcement officer used excessive force in violation of the Fourth Amendment requires the plaintiff to establish that the officer used force that was objectively unreasonable. See, e.g., Kemp v. Liebel, 877 F.3d 346, 352 (7th Cir. 2017). The test is an objective one, and thus the Court does not agree with defendants' contention that Matthews is required to show "an improper motive." Defs.' Reply at 4. That said, there must be evidence that the defendant "purposely or knowingly" used force; negligent use of force does not violate the Constitution. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Milton v. Slota, 697 F. App'x 462, 464 (7th Cir. 2017).

Matthews does not have a viable excessive force claim based on being taken to the ground while in the nurse's station. The video recording demonstrates quite clearly that this was an accidental or negligent use of force by the officers. One or both of the officers lost their balance and, because they had hold of Matthews' arms, pulled him to the ground as well. They did not deliberately take him down and did not, as he contends, slam his head into a wall or the floor either then or at any other point while in the nurse's office.

Matthew is entitled to a trial, however, regarding the claim that excessive force was used against him in the holding cell. The video quite clearly shows that the officer

6

on Matthews' right side as they entered the cell swept his leg across Matthews' leg, as if to trip him. Defendants essentially concede this in their opening brief. They say that "at the same time that the left-side officer appears to be pulling down on Matthews, the officer on Matthews' right side stops his forward progress *and moves his foot in a sweeping motion toward Matthews' right foot*." Defs.' Mem. at 8 (emphasis added). Defendants contend that the officer on Matthews' right side—who appears to be Debus—did this in order to try to make Matthews kneel in the middle of the cell. But that is at best debatable, and in any event there is no testimony to this effect: Debus says *nothing at all* about this in his affidavit. His silence on this point is rather deafening, given what the video shows. The Court concludes that a reasonable jury could find that the officer standing to Matthews' right deliberately tripped him. A jury might find that this constituted reasonable force but could, conversely, reasonably find that Debus used unreasonable force against Matthews, perhaps out of frustration due to his uncooperativeness and verbal insults.

After Matthews went to the ground in the holding cell, the remaining events took place out of the view of the video camera in the cell (indeed, a jury might reasonably find that defendants acted as they did believing that whatever they were doing would be off camera). Thus the Court cannot tell from the video whether Matthews' head hit the rear wall of the cell as he contends or what, if anything, happened while he was on the floor. In short, the video does not rule out Matthews' contention that he was punched or kicked unnecessarily and unreasonably while on the floor or that his legs or knees were unreasonably and unnecessarily twisted. A reasonable jury could accept Matthews' account of these events. The fact that he cannot attribute them to anyone in particular

7

is neither surprising—he had been forced face-down to the floor, and everyone else was on top of or behind him—nor fatal to his claims. *See Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012).

Prokop likely was not directly involved in the use of any force to Matthews while he was on the ground, and his pointing of the taser does not give rise to a claim of excessive force in and of itself. A reasonable jury could find, however, that Prokop had the opportunity to intervene to prevent the use of excessive force against Matthews while he was on the cell floor but failed to take reasonable steps to do so. Thus he may be liable for failure to intervene. *See id.*

In sum, Debus, Janovyak, and Prokop are not entitled to summary judgment on Matthews' excessive force claims under federal and state law.

### 3. Denial of medical care claims

Matthews states that while he was on the floor in the holding cell, the nurse came to the cell, but one or more of the officers told her to go away. The video would permit a reasonable jury to find that this is what occurred; it shows that the nurse came to the cell and then left almost immediately. Debus, Janovyak, and Prokop are not entitled to summary judgment on this claim either.

### 4. Defendant Adams

There is no evidence regarding the involvement of defendant Adams in any use of excessive force or denial of medical care, so Adams is entitled to entry of summary judgment.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary

judgment in part and denies it in part [dkt. no. 70] and terminates Matthews' "motion against summary judgment" [dkt. no. 84].  Defendants Adams, Beckman, and Hannon are entitled to summary judgment; defendants Debus, Janovyak, and Prokop are not.  The case is set for a status hearing on April 3, 2018 at 8:45 a.m.  Defendants' attorney is directed to make arrangements for plaintiff to participate by telephone.

Date:  March 19, 2018

_____
MATTHEW F. KENNELLY
United States District Judge