# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EURON MATTHEWS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 14 C 6003 |
| JAKE DEBUS, MICHAEL JANOVYAK, JASON PROKOP, and WILL COUNTY, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Euron Matthews filed a *pro se* lawsuit under 42 U.S.C. § 1983 against several Will County Sheriff's police officers and the County. He alleged the use of excessive force at the Will County Adult Detention Facility (the jail) following his arrest on August 4, 2013 and improper delay of medical care following the use of force. The Court appointed an attorney to represent Matthews but later gave her leave to withdraw. Matthews then proceeded *pro se*.

The defendants later moved for summary judgment. On March 19, 2018, the Court granted summary judgment for two defendants (Hannon and Beckman) who had been added to the case later, finding the claims against them time-barred, and also granted summary judgment for another defendant (Adams) against whom Matthews offered no evidence.

This left three defendants: officers Jake Debus, Michael Janovyak, and Jason

Prokop.  Matthews's claims against them centered around events when he was taken to a nurse's office in the jail for an intake examination, and events a few minutes later when he was taken to a holding cell.  Matthews's excessive force claims, the Court concluded, required him to establish that the defendants "purposely or knowingly" used force, *see Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017), and that the force was objectively unreasonable.  *See Kemp v. Liebel*, 877 F.3d 346, 352 (7th Cir. 2017).

In seeking summary judgment, the defendants largely relied on affidavits from each of the officers and video recordings that depicted the two incidents.  Matthews likewise submitted an affidavit.  He claimed the following in his affidavit, his deposition testimony, and his response to the summary judgment motion:

- his head was shoved into the door in the nurse's office;
- he was yanked to the floor in the nurse's office even though he presented no threat to anyone;
- one of the defendants deliberately tripped him while taking him into the holding cell, and his head was slammed into the back wall of the cell;
- he was assaulted while on the floor in the holding cell—specifically, he was punched and his leg was twisted, causing an injury to his knee;
- while he was on the floor of the holding cell, a taser was pointed at him and he was threatened with its use, even though he did not pose a threat to anyone; and
- although the nurse came into the holding cell while the defendants were attacking him, the defendants told her to leave.

*See Matthews v. Debus*, No. 14 C 6003, 2018 WL 1378178, at *1-2 (N.D. Ill. Mar. 19,

2018).

With regard to the incident in the nurse's office, defendants agreed in their affidavits that Matthews had gone down to the floor, but they all attributed this to Debus—who was holding Matthews's arm at the time—tripping or losing his balance. Specifically, Janovyak said that he and Debus each took one of Matthews's arms to take him from the office and that as they moved out of the room, Debus tripped and fell, with Janovyak and Matthews following in a chain reaction. Prokop similarly said that he saw the others fall as they were leaving the nurse's office. And Debus said that as he took Matthews's arm, he lost his balance, stumbled and fell, pulling Matthews with him. *See id.* at *2-3. The Court concluded as follows:

> Matthews does not have a viable excessive force claim based on being taken to the ground while in the nurse's station. The video recording demonstrates quite clearly that this was an accidental or negligent use of force by the officers. One or both of the officers lost their balance and, because they had hold of Matthews' arms, pulled him to the ground as well. They did not deliberately take him down and did not, as he contends, slam his head into a wall or the floor either then or at any other point while in the nurse's office.

*Id.* at *3. In other words, the Court granted summary judgment on the basis that Matthews could not show knowing use of force, as opposed to negligent or accidental use of force, which is not actionable under *Kingsley v. Hendrickson*.

Regarding the holding cell incident, the Court denied defendants' motion for summary judgment. On that incident, Janovyak said in his affidavit that upon entering the cell, Matthews was ordered to get onto the floor but did not comply; the officers tried to push him to his knees; but he did not go down and instead "lunged toward the back wall of the cell." *Id.* at *2 (quoting Janovyak Affid.). Prokop said that as they entered the cell, he directed Matthews to kneel, but he did not comply and instead lurched

3

forward. *Id.* Debus, one of the officers who escorted Matthews into the cell, said nothing about this incident. The Court determined, after reviewing the video, that a reasonable jury could find that the officer on Matthews's right as they entered the cell— apparently Debus—deliberately tripped him, causing him to fall forward and hit his head on the cell wall. This, the Court concluded, entitled Matthews to a trial on this claim. The Court separately concluded that summary judgment was inappropriate on his claim that the officers had delayed or denied him medical treatment following the incident.

In October 2018, the Court appointed new counsel to represent Matthews and allowed both sides to conduct further discovery. The Court later set the case for trial on February 25, 2020. On January 16, 2020, Matthews moved for reconsideration of the grant of summary judgment on the excessive force claim regarding the nurse's station incident. The Court has considered both sides' submissions, which are quite thorough. They include the same video recordings and affidavits the Court reviewed in considering summary judgment originally. But the current submissions also include significant material that was not available to the Court at that time, primarily transcripts of oral statements that each of the officers made to internal affairs investigators a little over two months after the incident. It appears that these had been produced to Matthews, but he did not submit them to the Court (likely out of inexperience or ignorance), and neither did the defendants. The new material also includes deposition testimony by the officers, all of which was obtained after new counsel was appointed to represent Matthews.

The new material puts matters in a significantly different light. Prokop, who is not one of the officers claimed to have taken Matthews to the ground, states the following:

Q: All right, and Matthews was taken to the ground, correct?

4

> A: That's correct.
>
> Q: When he was taken to the ground, would you say he was forcefully taken to the ground, or was he, you know, more or less just the body weight of everybody taken to the ground?
>
> A: It was the body weight of taking him down. He was . . . arm bar take down. He wasn't slammed to the ground, but he was thrown to the ground.

Pl.'s Ex. 1-N at 9. Debus stated as follows:

> A: . . . I gave a direct order for Inmate Matthews to stand up and to place his hands behind his back because he was being verbally abusive towards staff. Inmate Matthews did not comply. I then attempted to gain control of Inmate Matthew's [sic] left arm and placed it in the escort position, pressure, counter-pressure, and escort him out of the Nurse's Station and into Booking Cell 1. At that time, Inmate Matthews pulled away from my arm and my grasp, um, pushing me off balance. ERT Janovyak then took control of Inmate Matthew's [sic] right arm. Un, at this point, Inmate Matthews tensed both arms and attempted to pull away from us. *I was off balance and decided to assist Inmate Matthews to the ground to better restrain him* . . . .

Pl.'s Ex. 1-O at 7 (emphasis added). And Janovyak stated as follows:

> A: . . . We gave him a direct order to stand up and then he kind of sat there and then he reluctantly stood up, and at that point is when we went to put him in an escort position to walk him into the padded cell.
>
> . . .
>
> Q: Okay and what happened once you got into the hallway?
>
> A: As soon as we, uh, took control of his arms, he began to tense his arms and then that's when he began to thrash his body. *Then we decided to take him to the ground from that point.*
>
> Q: Okay. And when you took him down to the ground, did you guys slam him on the ground? I mean, of course, there's going to use [sic] a little bit of force, just from him going to the ground, but I mean, did you intentionally slam him onto the ground or anything else of that nature?

5

A: No.

Q: So it's probably safe to say that the force used to take him to the ground would be, basically, just the weight of himself as well as the ERT's that were, you know, with him?

A: Yes.

Pl.'s Ex. 1-P at 7-8 (emphasis added).

Each of these statements contradicts, some of them more than others, the officers' earlier contention that there was no deliberate use of force in the takedown, and each of them undercuts the Court's conclusion that this threshold requirement under *Kingsley v. Hendrickson* was not met.

This leaves the video, which of course has not changed since the Court's earlier review of it. Upon further careful review, however, it now does not appear all that clear to the Court that what happened was a slip or loss of balance and an accidental fall/takedown. Rather, the Court believes that a reasonable finder of fact viewing the video could find that the officers deliberately took Matthews to the ground. The best explanation the Court can give for why it sees the video differently now than it did back in March 2018 is that it considered the video then in light of the officers' consistent explanation of the events contained in their affidavits offered with the summary judgment motion, and that it is now considering the video in light of a materially different array of statements about what took place. To be sure, a reasonable jury looking at the evidence certainly could find that the takedown was accidental and/or the result of a slip or trip and thus did not meet the threshold for a constitutional claim. But a reasonable jury likewise could find that defendants deliberately used force to take Matthews to the ground and that this was not objectively reasonable under the circumstances. In short,

the Court's earlier ruling granting summary judgment was erroneous and was based on a misunderstanding of the evidence.

Defendants argue that the evidence appointed counsel have submitted it not new—Matthews had it at the time of the earlier summary judgment motion—and thus that it does not provide a proper basis for reconsideration. But Matthews was acting *pro se* at the time and was an inexperienced litigant. He likely did not appreciate the need to submit defendants' additional statements to the Court to prevent summary judgment, particularly in view of the submission of his video and Matthews's own sworn statement that he was taken to the ground. The Court can, and does, appropriately exercise its discretion not to hold Matthews to the same standard to which it would hold an attorney.

Defendants also note that appointed counsel have been in the case for well over a year, have had the evidence for a considerable amount of time, and could have come forward with the present motion far earlier. This is a valid point. But defendants do not claim any actual prejudice from the late filing of the motion: they do not identify any discovery that was foregone because this claim was out of the case or, for that matter, anything they would have done differently. The Court also appreciates that we are very close to the trial date, but the case is not terribly complex, and these is no reason to believe that the need to prepare to try this additional claim against the same defendants will materially alter the defendants' trial preparation (they do not contend it will).

**Conclusion**

For these reasons, the Court grants plaintiff's motion to reconsider [dkt. no. 144] and vacates its order of March 19, 2018 to the extent it granted summary judgment in favor of defendants Debus, Janovyak, and Prokop on plaintiff's excessive force claim

regarding the incident at the nurse's office on August 4, 2013. That claim will proceed to trial along with plaintiff's remaining claims.

Date: February 17, 2020

_____
MATTHEW F. KENNELLY
United States District Judge