# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EURON MATTHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14 C 6003 |
| ) | |
| JAKE DEBUS, MICHAEL ) | |
| JANOVYAK, JASON PROKOP, ) | |
| and WILL COUNTY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Euron Matthews has asserted claims against several Will County correctional officers for excessive force and denial of medical care arising from incidents in the Will County jail following his arrest on August 4, 2013. The case is set for trial on February 25, 2020. The Court rules as follows on the parties' motions *in limine*.

### Plaintiff's motions *in limine*

1. **Prior convictions**

   a. **Evidence relating to convictions more than 10 years old**

Matthews has several felony convictions that are more than ten years old: a 1993 conviction for sale of firearms, for which he was sentenced to two years in prison; a 1993 conviction for possession of a controlled substance and unlawful use of a weapon by a felon, for which he received a two-year prison sentence; a 1996 conviction for unlawful use of a weapon by a felon, for which a four-year prison sentence was

imposed; and a 2001 conviction for two counts of distribution of a controlled substance, for which he was sentenced to twenty-five years in prison. (It is likely that the time Matthews actually served on each of these convictions is significantly less—in particular on the last one, seeing as how he was no longer in prison as of August 2013—but the parties have not provided the Court with those details.) Matthews has moved to exclude all evidence relating to these convictions.

Under Federal Rule of Evidence 609(b)(1), evidence of a conviction more than ten years old (dating from the conviction or release from confinement, whichever is later) is not admissible for the purpose of impeaching the convicted person's credibility unless its probative value substantially outweighs its prejudicial effect. The latter is not the case for any of the convictions in question. None of these older convictions adds anything material to the mix given the admissibility for impeachment purposes of Matthews's two more recent felony convictions. In light of this evidence, the older convictions have, at most, minimal probative value for impeachment purposes that is far outweighed by the potential for unfair prejudice to Matthews that would result in the admission of these convictions.

That said, defendants are not offering the convictions for impeachment purposes; instead, they offer the convictions "to rebut Plaintiff's claimed emotional injuries in this case." *See* Defs.' Resp. to Pl.'s Mots. In Limine at 2. Matthews contends that the defendants' use of excessive force has caused him social and psychological impairments, including avoiding people, withdrawing from activities of daily life, trouble sleeping, feelings of shame and anger, and loss of a sense of integrity. Defendants say these contentions "are contradicted by the fact that Plaintiff has been incarcerated for

significant periods of time in the last 30 years as a result of multiple felony convictions."
*Id.*

Defendants rely primarily on *Cobige v. City of Chicago*, 651 F.3d 780, 784-85 (7th Cir. 2011). *Cobige*, however, is nothing like this case. There the plaintiff sought damages for the loss of the deceased victim's support and advice to her surviving son, and the court concluded that her prior criminal record was relevant and admissible to undercut the likelihood that she would have been able to provide him assistance and to undermine the qualify of the support she could have offered. *See id.* at 784-85. Matthews is not claiming damages of that sort; he claims physical and emotional harm from excessive force.

Later Seventh Circuit cases have limited the admissibility of criminal-conviction evidence to rebut a plaintiff's claim for damages.[1] In *Barber v. City of Chicago*, 725 F.3d 702 (7th Cir. 2013), the court ordered a new trial based on, in part, the admission of a felony conviction to rebut a claim for damages for emotional distress. The court noted that "[p]resenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions and other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Id.* at 714; *accord*, *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992). And a history of arrests has "miniscule probative value" on the question of emotional distress damages arising from an incident of excessive force. *Nelson v. City of Chicago*, 810 F.3d 1061, 1069 (7th Cir. 2016)

---

[1] Defendants do not oppose Matthews's motion to exclude evidence of his arrests that have not resulted in convictions, *see* Defs.' Resp. to Pl.'s Mots. In Limine at 1 n.1, so the Court grants that motion.

3

(quoting *Barber*, 725 F.3d at 714).

That said, unlike the plaintiff in *Barber*, Matthews is not limiting his claim for damages to the emotional distress he felt during and just after the incidents at issue in this case; he is claiming a significant, ongoing impairment even now, almost six years later—including feelings of shame and inadequacy. In *Barber*, the case on which Matthews relies most heavily, the plaintiff "did not claim a generally disabling long-term trauma." *Barber*, 725 F.3d at 713.[2] And the court said that if the plaintiff *had* cast his claim of emotional distress more broadly, the probative value of an intervening felony conviction "would have been much greater. The larger the chunk of one's life that is claimed to have been negatively impacted by emotional distress, the more important it is to explore other events that may have contributed to the individual's loss." *Id.*

Unlike in many excessive force cases, the evidence relating to Matthews's older convictions have some probative value for the purpose of showing alternative sources for the emotional harm that he contends was caused by the defendants' alleged use of excessive force. In contrast to the plaintiffs in a good many excessive force cases, Matthews is claiming a significant and long-lasting impairment to his self-image and his ability to interact with others. Defendants have a straight-faced argument that his criminal history and resulting imprisonment—not the defendants' claimed use of excessive force—is an alternative cause of his claimed emotional injuries or at least a contributing factor.

On the other side of the ledger, the evidence regarding Matthews' prior

---

[2] In *Nelson*, the plaintiff claimed emotional distress during the traffic stop as well as ongoing embarrassment and anger; he did not, however, claim any general ongoing fear of law enforcement officers. *Nelson*, 810 F.3d at 1061, 1069.

4

convictions poses a significant potential for unfair prejudice. As the Seventh Circuit indicated in *Barber*, there is a significant risk that a jury that heard the entirety of Matthews' criminal record would simply consider him a bad person who should not be compensated via the legal system. This has a significant potential to undermine the likelihood that liability—and damages—will be determined on the merits rather than based on a determination of who, between plaintiff and defendants, is a better person.

Ultimately, the potential for unfair prejudice, including the old age of the convictions in question here, carries the day; it significantly outweighs the probative value of the evidence relating to these convictions. This is particularly so in light of other evidence relating to Matthews' more current criminal history that the Court will admit, discussed in the next section of this decision. For these reasons, the Court excludes, under Federal Rule of Evidence 403, evidence relating to Matthews' convictions that are more than ten years old.

**b.     Evidence relating to convictions less than 10 years old**

Matthews also has a 2014 conviction for unlawful use of a weapon by a felon that resulted in a two-year prison term and a 2017 conviction for aggravated discharge of a firearm and armed habitual criminal, resulting in consecutive sentences totaling thirty-seven years. The 2014 conviction is related to the arrest connected with the alleged excessive-force incident at issue in this case. Matthews is currently serving the sentence imposed for the 2017 conviction and is being writted in from prison to participate in the upcoming trial in the present case. He has moved to limit evidence regarding these convictions to the fact and date of each conviction; he asks the Court to exclude evidence regarding the nature of the crimes, the underlying facts, and the

length of the sentences.

The Court again starts with Rule 609(a).  Under that rule, what is typically admissible for impeachment purposes is the conviction, not the sentence imposed; the sentence imposed by a court has little or nothing to do with the question of the witness's credibility.  And here, the particular crimes for which Matthews was convicted do not have any specific relationship to veracity.  Rather, what is potentially relevant and probative is the fact of the felony convictions.  Under Rule 609(a) and Rule 403, the Court concludes that the sentences imposed and the titles of the convictions have minimal probative value or less but do pose a considerable risk of unfair prejudice to Matthews.[3]  Thus for purposes of impeaching Matthews's credibility, defendants may offer only the dates of the convictions and the fact that each of them is for a felony; they may not offer the sentences or the titles of the crimes.  (Matthews may, of course, "front" this evidence on direct examination if he wishes to do so.)

Again, however, defendants are offering these convictions, as well as the sentences and apparently the titles of each crime, to rebut Matthews's claimed emotional distress damages.  Defendants' position on this is laid out in the previous section of this opinion.  The Court notes in this regard that defendants' expert on the topic of the emotional distress claim evidently does not contend in his report that any part of Matthews's distress is caused by his prior or current incarcerations, but only that he does not suffer from post-traumatic stress disorder as claimed by Matthews's expert

---

[3] In their response to Matthews's motion, defendants articulate no argument for admitting the underlying facts of the convictions.  The Court concludes that those facts have no probative value regarding Matthews's damages or any other relevant issue in the case and present a significant potential for unfair prejudice, so the Court excludes this evidence.

6

(and perhaps others). Rather, the contention about the incarcerations as an alternative or contributing cause is entirely an argument based on inference, not testimony by an expert or any other witness.

The Court concludes, for the reasons there discussed, that some limited evidence regarding Matthews's incarceration history is relevant, properly admissible, and not unfairly prejudicial to rebut his claim for damages for emotional distress. Specifically, the Court will permit defendants to elicit (and Matthews to "front," if he wishes) that for his 2014 conviction that arises from the August 4, 2013 arrest, a two-year prison sentence was imposed, and that he is currently serving a prison term for his 2017 conviction—but not the length of that term (twenty-five years), which has an overwhelming likelihood of causing unfair prejudice to Matthews that far outweighs the probative value of that evidence. In addition, the titles of the crimes for which Matthews has been convicted are excluded under Rule 403; what may be elicited is that each of them is for a felony. The Court believes the evidence that it is allowing in this regard will sufficiently enable defendants to support their alternative-cause argument without unduly and unfairly prejudicing Matthews.

**2.       Plaintiff's lawsuit against and settlement with arresting officers**

In addition to the present case, Matthews filed a *pro se* lawsuit against the officers who arrested him in Lockport on August 4, 2013—the same date as the incidents involved in the present case, claiming (among other things) that the arresting officers used excessive force. Matthews seeks to exclude evidence about the arresting-officer lawsuit and about his contention that the other officers used excessive force, as well as the settlement of the case, apparently (according to defendants) for $17,500.

7

Defendants contend that they should be able to put into evidence the circumstances of Matthews's arrest; apparently, the circumstances of the incident that led to the arrest; video and audio from a recording device in the squad car in which Matthews was transported to the jail; Matthews's filing of a lawsuit against the arresting officers and his testimony about their actions; and the terms of the settlement of that lawsuit. They contend that the evidence is relevant to show the extent to which Matthews was injured before arriving at the jail and his demeanor while at the jail.

There are a couple of oddities about defendants' contentions. First, they make no effort to explain how they propose to get into evidence their contentions regarding the underlying events that led to Matthews's arrest. Defendants do not appear to have designated in the final pretrial order any witness who observed those events other than Matthews himself. But Matthews denies having committed the crimes with which he was charged, and all the remaining charges were dropped when Matthews pled guilty to possession of a firearm. Furthermore, the police report's description of what was reported—assuming defendants have designated it as an exhibit—is inadmissible hearsay. Thus defendants do not appear to have any admissible evidence regarding what they contend happened before the officers arrived on the scene. The Court will not permit defendants to get in, through their phrasing of questions to Matthews about those events, contentions that they will be unable to support with admissible evidence; that would unfairly prejudice Matthews in a way that would far exceed the probative value of such questioning. At the outset of trial on February 25, the Court will expect defendants to explain to the Court *exactly* what they want to put into evidence about the underlying incident preceding Matthews's August 4, 2013 arrest and *exactly* how they

8

propose to get it into evidence.

Second, though defendants contend that they should be able to put in Matthews's interaction with the arresting officers to try to show an alternative cause for his claimed injuries, from what the Court understands those officers—who, like the defendants in the case, are Will County Sheriff's police officers—deny any contention that they harmed Matthews or roughed him up. The Court leaves for later determination whether, if defendants elicit evidence regarding Matthews's claims about what the arresting officers did, Matthews may call the officers in rebuttal.

That said, however, Matthews's contentions regarding being smashed against the squad car incident to his arrest are relevant and admissible, and not unfairly prejudicial, regarding his claim that his physical and emotional injuries resulted from the defendant correctional officers' use of excessive force. Specifically, this evidence tends to show that Matthews's injuries were caused by persons other than the defendants in this case. Thus defendants may introduce into evidence, via questioning Matthews or in some other appropriate way, his claims about what the arresting officers did to him.

The same is true of the fact that Matthews filed a lawsuit against the arresting officers. The fact that he pursued the matter to that extent tends to show that he was serious about his contention that these officers harmed him. This, again, is relevant and probative to rebut his claims of injuries caused by the defendant correctional officers, and not unfairly prejudicial. The Court likewise concludes that Matthews's deposition testimony regarding what he claims the arresting officers did to him is relevant and admissible. However, the Court leaves for further discussion on February 25 the question of the admissibility of the settlement of the suit against the arresting officers.

Finally, the squad car video—but only the part that depicts Matthews—is relevant and admissible to show the extent of any injuries to him before he came into contact with the defendants. The Court excludes the audio, however. In it, Matthews appears to repeat to himself several times that a gun was planted on him. As the Court has previously ruled, the nature of the crime for which Matthews was charged and convicted is inadmissible, and allowing in the audio in would make that ruling ineffectual. That aside, the audio has little, if any, probative value regarding Matthews's demeanor and actions at the later point in time when he came into contact with the defendants. And there is other evidence that may be admitted about that, including extensive video showing Matthews's actions and demeanor when and after he arrived at the jail. The audio is inadmissible under Rule 403.

**3.     Matthews's medical records**

The Court is not prepared at this time to rule on Matthews's motion seeking admission of certain materials from his medical records and will issue a ruling on that prior to trial or will hear further argument on February 25.

**4.     Quasi-character testimony and evidence about defendants**

The Court grants Matthews's motion to preclude defendants from offering evidence or argument "that portrays the risks faced by members of law enforcement generally or that heroizes members of law enforcement." Pl.'s Mot. to Bar Defs. from Portraying Members of Law Enforcement as Heroes (etc.) at 2. Such evidence and argument have little to no probative value, and it risks unfair prejudice to Matthews, as well as diversion of the jury away from the actual issues in the case and into a dispute about who is the better person between plaintiff and defendants. Defendants quote

cases regarding the risks faced by law enforcement and correctional officers, but those are points that were made in those cases to explain why courts set particular legal standards for evaluating claims against such officers, not to suggest—as defendants seem to contend—that such evidence is routinely admissible in any excessive force or other case involving claims of officer misconduct. What is relevant in this regard are the risks, if any, that defendants faced at the time of the incidents in question, not the risks inherent in their jobs. Nor may defendants elicit evidence regarding commendations, awards, or the lack of discipline against the officers, for the same reasons.

<strong>Defendants' motions</strong>

**1.     Evidence regarding defendants' intent**

Defendants ask the Court to exclude evidence of their intent or motive—in particular, a contention by Matthews that in using excessive force, defendants were retaliating against him for an earlier altercation—as support for his excessive force claim. In support, they point out that Matthews's Fourth Amendment excessive force claim is governed by an objective standard.

The Court overrules defendant's motion, for three reasons. First (but not necessarily most importantly), Matthews is also asserting, among other claims, a state-law claim of intentional infliction of emotional distress, which has a subjective element. And his state-law claims require him to establish willful and wanton conduct, making the intent and motive evidence relevant and highly probative. Second, Matthews is seeking punitive damages, and one way to support punitive damages is to show that the defendant acted with ill will or spite or for the purpose of harming the plaintiff. *See* 7th Cir. Pattern Civil Jury Instr. 7.28. Third, a central disputed issue in this case involves

whether defendants knowingly used force against Matthews in the incidents in question or whether one or both of the take-downs were accidental. The motive evidence is directly relevant and highly probative of this point. And there is little, if any, potential for unfair prejudice. Because evidence of intent and motive is relevant for these purposes, the Court need not address Matthews's other arguments in support of admissibility.

**2.      Lay opinion testimony regarding Matthews' ongoing symptoms**

Matthews may properly testify regarding his physical and mental/emotional symptoms, when they began in relation to the incidents in question, whether they are ongoing, and their severity. He may not, however, render an opinion regarding their cause, given the absence of a foundation sufficient to qualify him to render such an opinion. The question of causation will have to be left to inference and argument, in the absence of medical causation testimony. But the absence of medical testimony does not preclude Matthews from arguing causation to the jury; defendants' motion is entirely lacking in relevant legal support on that point. Defendants' arguments regarding alternative potential sources of causation may affect the persuasiveness of Matthews's causation argument, but they do not call for precluding it.

**3.      Compliance with Sheriff's Office policies and procedures**

The Court overrules defendants' motion to preclude evidence regarding whether defendants' actions comported with Will County Sheriff's Office policies and procedures. First, this evidence is unquestionably admissible on the state-law claims and on the issue of punitive damages, given the requirement to show maliciousness. Second, contrary to defendants' contentions, there is no blanket rule barring evidence of law enforcement policies in excessive force cases or, for that matter, in cases involving

constitutional-law claims generally. *See, e.g., United States v. Proano*, 912 F.3d 430, 439 (7th Cir. 2019); *see also Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). The Court is also inclined to agree with Matthews's argument that compliance with such policies is relevant on the question of the relationship between the need for force and the amount of force used, a factor in assessing the objective reasonableness of defendants' actions even on the question of liability on the Fourth Amendment claim. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The Court also notes that the report of defendants' law-enforcement-practices expert includes an opinion that defendants acted in accordance with the Sheriff's policy directives, making this evidence relevant to counter his testimony even if was not admissible on other bases.

**4.   Argument that defendants were required to use the least force needed**

Finally, the Court overrules defendants' motion to preclude evidence and argument that they could have used less force than they did. As just noted, among the factors a jury considers in determining whether force used by an officer was objectively unreasonable are "any effort made by the officer to temper or to limit the amount of force" and "the relationship between the need for the use of force and the amount of force used." *Kingsley*, 135 S. Ct. at 2473. This squarely brings into play the very point that defendants ask the Court to bar.

Date:  February 19, 2020

                                                                 _____
                                                                   MATTHEW F. KENNELLY
                                                                   United States District Judge