**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EURON MATTHEWS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 14 C 6003** |
| ) | |
| **JAKE DEBUS, MICHAEL JANOVYAK,** ) | |
| **JASON PROKOP, and WILL COUNTY,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiff Euron Matthews sued several Will County correctional officers over incidents in the Will County jail following his arrest. His case proceeded to trial against three of the officers—Jake Debus, Michael Janovyak, and Jason Prokop—on claims for excessive force, failure to intervene, failure to provide medical treatment, battery, and intentional infliction of emotional distress. The jury found in favor of Matthews on his excessive force claim against Debus and in favor of the defendants on all of Matthews's other claims. On the excessive force claim, the jury awarded Matthews only nominal damages. Matthews has moved for a new trial on damages, and both sides have moved to recover their costs.

## Background

### A.    Factual background

The following summary of the facts is based on the trial record. Early in the morning on August 4, 2013, sheriff's deputies arrested Matthews. Matthews testified

that the arresting officers placed his body against the squad car, and his face hit the hood of the car. As the officers moved him into the car, he testified, his head hit the car's frame. He testified that, once inside the car, he banged his head against a video camera mounted inside it. The jury was shown video footage from that camera. Matthews testified that these incidents caused injuries to his face, but he was not sure of the specific nature of the injuries. He filed a separate lawsuit concerning the alleged use of excessive force at the time of his arrest. *Matthews v. Beckman*, Case No. 14 C 6002 (N.D. Ill.). That lawsuit was later dismissed, apparently pursuant to a settlement.

The events relevant to Matthews's allegations in this lawsuit occurred after the arresting officers brought him to the jail, where Debus, Janovyak, and Prokop were involved in the jail intake process. Debus and Prokop testified that they did not remember seeing blood on Matthews's face when he arrived at the jail. Soon after arriving, Matthews was taken to a nurse's office for an intake examination. The jury was shown a video (which did not include audio) of what happened next. Matthews was ordered to sit in a chair, and he did so. Debus and Janovyak stood at the entrance to the nurse's office. Prokop stood in the hallway.

The video showed Debus, Janovyak, and Matthews speaking with each other. Matthews testified that Janovyak was making derogatory comments to him. Debus testified that he believed that Matthews was being verbally aggressive. At some point, one of the officers ordered Matthews to stand up and place his hands behind his back. Matthews testified that, as he was getting ready to do so, he felt that he was snatched from behind and hit across the head. Debus testified that he and Janovyak placed their hands on Matthews, but that Debus lost his balance and that he and Matthews fell onto

the ground.  However, Debus had previously told interviewers investigating the incident that he had "decided to assist" Matthews to the ground, not that they had fallen.  Pl.'s LR 56.1 Stat. in Supp. of Mot. for Reconsideration, Ex. 1-O at 7.  Prokop testified that Debus and Janovyak used a maneuver called a straight arm takedown to take Matthews to the ground.

At trial, Donald Leach, a retired jail administrator testifying as an expert on behalf of Matthews, opined that this incident in the nurse's office involved an unreasonable use of force.  This was because, Leach said, Matthews appeared to comply with the officers' orders.  Based on the video footage, Leach testified that it appeared Debus had used a maneuver called a leg sweep, as well as an arm maneuver, to bring Matthews to the ground.

Matthews and Debus ended up on the floor of the hallway outside the nurse's office.  The jury saw another video of what followed.  Debus, Janovyak, and Prokop surrounded Matthews.  The officers each testified that they tried to place Matthews in handcuffs.  Janovyak testified that Matthews held his hands underneath his sternum, so it took five or six officers to get the handcuffs on his wrists.  Matthews testified that he had no memory of the incident in the hallway, perhaps due to his alleged head injuries.  Matthews's expert Leach opined, based on the video, that the officers did not use excessive force against Matthews in the hallway.

After the officers placed Matthews in handcuffs, they walked him to a nearby holding cell with padded walls.  The jury watched video footage from the cell.  Debus testified that, once inside the holding cell, he ordered Matthews to go down to his knees and then to lie prone.  In his incident report, Debus stated that Matthews complied with

3

those orders.  At trial, however, Debus testified that Matthews did not initially comply.  It is undisputed that Debus used a leg sweep maneuver to bring Matthews to the ground. Debus testified that officers are permitted to use leg sweeps on a person in handcuffs if the officers support the person as he or she moves the ground.  For his part, Matthews testified that the officers dragged him into the holding cell, pressed his face against the wall, and tripped him.

At that point, Matthews was in the rear of the cell, and most of his body was not visible on the video.  Debus and Prokop were not visible on the video either, but they also were both in the cell.  Janovyak was visible; he was holding onto Matthews's legs, which he testified he did in order to keep control of Matthews.  Matthews testified that the officers restrained him and punched him while he was on the ground.[1]  He also testified that one officer—he thought it might have been Janovyak—twisted his knee.

Debus testified that Matthews's face was bleeding when he was in the cell. Debus also testified that he assumed a position through which he controlled Matthews's ability to move but did not apply pressure to Matthews's body.  Debus testified that he did not punch or kick Matthews after taking him into the holding cell.

Leach testified that there was no legitimate need for the officers to use force against Matthews in the holding cell because, among other things, he was handcuffed and appeared to Leach to be complying with orders.  Further, Leach testified that the way Debus used a leg sweep represented an unreasonable use of force, in part because it appeared to cause Matthews to fall forcibly to the ground.

---

[1] Matthews also testified that the officers pointed the laser from a taser at him, and there is other testimony reflecting that Prokop removed his taser from his holster but did not use it.  That is not, however, relevant to the present motions.

4

As a result of these incidents at the jail, Matthews testified, he suffered physical injuries, including pain in his knee, headaches, facial bleeding, dizziness, anxiety or panic attacks, and other mental distress. He testified that he did not experience these symptoms prior to August 4, 2013. The jury saw a booking photograph taken of Matthews after the incidents with the officers, which shows injuries on his face. Leach testified that videos showed that Matthews walked without a limp prior to the incidents but was limping afterward. The jury watched these videos as well. Medical records from the jail also described injuries to Matthews's face and knees.

**B.    Procedural background**

In August 2014, Matthews filed this case against Debus, Janovyak, Prokop, Will County, and other individuals who work for Will County. The Court appointed an attorney to represent Matthews, who filed an amended complaint on his behalf. In his amended complaint, Matthews alleged claims against the officers for excessive force, failure to intervene, and failure to provide medical care under 42 U.S.C. § 1983, as well as state-law claims for battery and intentional infliction of emotional defense against all of the defendants and a state-law indemnification claim against Will County. Matthews's attorney later sought leave to withdraw, which the Court granted. Matthews then proceeded *pro se.*

The defendants later moved for summary judgment, largely relying on affidavits from the officers and video recordings of the incidents in the nurse's office and holding cell. At this point, Matthews was still proceeding *pro se* from his place of incarceration. In March 2018, the Court granted summary judgment for three of the individual defendants but not for Debus, Janovyak, and Prokop. *Matthews v. Debus*, No. 14 C

6003, 2018 WL 1378178, at *4 (N.D. Ill. Mar. 19, 2018), *order vacated in part on reconsideration*, 2020 WL 763572 (N.D. Ill. Feb. 17, 2020). With regard to the incident in the holding cell, defendants submitted an affidavit by Debus that omitted—rather conspicuously, it turned out—any reference at all to what had happened in the holding cell,[2] *see generally* Defs.' LR 56.1 Stat., Ex. F; an affidavit from Prokop stating that in the cell, he put his hand on Matthews's head "to guide him down" to a kneeling position and that Matthews "instead . . . lurched forward," *id.*, Ex. E ¶¶ 12–13; and an affidavit from Janovyak likewise stating that "[w]e tried to push [Matthews] to his knees," but instead "Matthews lunged forward," *id.*, Ex. D ¶ 17. The Court also reviewed the video, however, and this belied the defendants' statements; it was clear that Debus, whose silence on this point in his affidavit was rather deafening, had swept Matthews's leg to force him to the ground, a maneuver about which he said nothing and that contradicted the other officers' statements. The Court concluded that these three defendants were not entitled to summary judgment on the holding cell excessive force claim for this reason. *Matthews*, 2018 WL 1378178, at *3–4.

On Matthews's nursing station excessive force claim, Debus and Janovyak each stated in a sworn affidavit that while holding Matthews to prepare to escort him out, Debus lost his balance or tripped and fell, and Matthews followed in a chain reaction. *See* Defs.' LR 56.1 Stat., Exs. D ¶¶ 12–13, F ¶¶ 8–13. Prokop supported this, saying that he had seen the others "beg[i]n to fall" onto the floor. *Id.*, Ex. E ¶ 9. In short, they

---

[2] Defendants' opening summary judgment memorandum conceded—presumably due to the fact that it was readily apparent from the video—that an officer had "move[d] his foot in a sweeping motion toward Matthews' right foot." Defs.' Mem. at 8. Defendants nonetheless sought summary judgment on this aspect of Matthews's claim.

claimed that they had not purposely taken Matthews to the ground but rather that it had happened accidentally. The defendants made no mention in their affidavits, nor did their counsel in defendants' summary judgment memorandum, that the three defendants had given statements to internal affairs investigators regarding the incident. The Court, despite viewing the video, adopted their account and concluded that no officer had deliberately taken Matthews down or slammed his head to the floor or to a wall. *See Matthews*, 2018 WL 1378178, at *3. In summary, the Court concluded that Matthews did not "have a viable excessive force claim based on being taken to the ground while in the nurse's station." *Id.*

In October 2018, the Court appointed new counsel to represent Matthews and allowed both sides to conduct further discovery. In January 2020, Matthews moved for reconsideration of the grant of summary judgment on the excessive force claim regarding the nurse's station incident. The parties' submissions with regard to that motion contained significant material that had not been provided to the Court when it ruled on the defendants' motion for summary judgment. This material consisted primarily transcripts of oral statements that each of the officers made to internal affairs investigators a little over two months after the incident—which had been produced to Matthews before the motion for summary judgment but that defendants and Matthews (who, again, had been acting *pro se* at that point) had not provided to the Court in connection with the motion—as well as deposition testimony by the officers secured by appointed counsel after the summary judgment motion.

The Court found that the new material put matters in a significantly different light. Specifically, Prokop—who had submitted to the Court a sworn affidavit stating only that

he had seen Matthews, Debus, and Janovyak "beg[i]n to fall" to the floor outside the nurse's station, Defs.' LR 56.1 Stat., Ex. E ¶ 9, had previously told internal affairs investigators that Matthews had been "thrown to the ground," Pl.'s LR 56.1 Stat. in Supp. of Mot. for Reconsideration, Ex. 1-N at 9. Debus, who had stated in a sworn affidavit to the Court that he lost his balance and fell, with Matthews falling along with him, had previously told internal affairs investigators that he had "decided to assist Inmate Matthews to the ground to better restrain him," *Id.*, Ex. 1-O at 7. And Janovyak, who had stated in a sworn affidavit to the Court that while attempting to escort Matthews out of the nurse's station, "Debus tripped and fell to the ground. Matthews and I then followed in a kind of chain reaction," Defs.' LR 56.1 Stat., Exs. D ¶ 13, had previously told internal affairs investigators that "we decided to take [Matthews] to the ground," Pl.'s LR 56.1 Stat. in Supp. of Mot. for Reconsideration, Ex. 1-P at 8. In short, each of the defendants had previously given statements to internal affairs that contradicted, in a significant way, the account of the nurse's station incident that they had attempted— successfully—to present to the Court.

After considering all of the evidence, and reevaluating the video in light of the defendants' previous statements, the Court granted Matthews's motion to reconsider and vacated the prior grant of summary judgment in favor of defendants Debus, Janovyak, and Prokop on Matthews's excessive force claim regarding the incident at the nurse's office on August 4, 2013. *Matthews v. Debus*, No. 14 C 6003, 2020 WL 763572, at *4 (N.D. Ill. Feb. 17, 2020).

In March 2020, Matthews proceeded to trial against Debus, Janovyak, and Prokop on his claims of excessive force, failure to intervene, failure to provide medical

care, battery, and intentional infliction of emotional distress. The parties stipulated that Will County would indemnify the individual defendants for any compensatory damages, so the indemnification claim did not go to the jury. Following a five-day trial, the jury found in favor of Matthews on his claim of excessive force against Debus and in favor of the defendants on all of Matthews's other claims. On the claim against Debus, as indicated, the jury awarded him nominal damages.

## Discussion

### A.    Motion for a new trial

Matthews has moved under Federal Rule of Civil Procedure 59(a)(1)(A) for a new trial on the question of damages. A new trial is warranted if the verdict was "against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018). In making this determination, a court "has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012). The Seventh Circuit has cautioned, however, that a court should grant a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Estate of Burford v. Accounting Practice Sales, Inc.*, 851 F.3d 641, 646 (7th Cir. 2017).

Matthews asserts that the jury's award of nominal damages for his excessive force claim against Debus goes against the manifest weight of the evidence. The Seventh Circuit has "recognized three situations where nominal damages might be appropriate to remedy an excessive force violation." *Frizzell v. Szabo*, 647 F.3d 698,

701–02 (7th Cir. 2011) (citing *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996)).

These situations are:

> (1) where an [ ] officer uses both justifiable and excessive force, but any injury results from the use of justifiable force, (2) where a jury reasonably concludes that evidence of plaintiff's injury is not credible, or (3) where a plaintiff's injuries are insufficient to justify with reasonable certainty a more substantial measure of damages.

*Id.* at 702 (citing *Briggs*, 93 F.3d at 360) (the "*Briggs* situations").

Matthews asserts that none of the *Briggs* situations apply to his case. The first situation does not apply, he contends, because he was complying with the officers' orders and thus Debus had no justifiable reason to use force at any time. Accordingly, Matthews contends, his injuries could have resulted only from the use of excessive force.

In *Frizzell*, the plaintiff sued an officer who had arrested him, alleging the use of excessive force. *Id.* at 699. At trial, there was testimony that the officer used a taser on the plaintiff between five and seven times, pepper-sprayed him, and jumped or knelt on his chest. *Id.* at 700–01. The court found that the jury could have reasonably concluded that the officer's use of the taser was not excessive but that his subsequent use of pepper spray or jumping on the plaintiff's chest was excessive. *Id.* at 702. If the jury made that finding, the court stated, it reasonably could have concluded based on the evidence that the use or pepper spray and/or the officer's jumping "caused little or no quantifiable injury or pain." *Id.* "If so, nominal damages would be appropriate under situations (1) and (3) of the *Briggs* rationale." *Id.*

Similarly, in this case there were multiple interactions between Debus and Matthews from which the jury could have found that Debus used force. Specifically, the

jury could have found that Debus used force to bring Matthews to the ground in the nurse's office by using a leg sweep and/or arm maneuver; to place him in handcuffs in the hallway; to use a leg sweep maneuver on him in the holding cell; and/or to restrain, punch, or otherwise beat him in the holding cell. As in *Frizzell*, it is possible that the jury found that one or more, but not all, of these alleged uses of force were excessive.

For example, the jury reasonably could have concluded that Debus used excessive force to bring Matthews to the ground in the nurse's office and the holding cell. This could have been based on a finding that, as Leach testified, Matthews was attempting to comply with orders at both of those times, so the use of force was unnecessary. By contrast, the jury could have found that Debus's use of force in the hallway was justifiable, based on testimony that Matthews resisted the officers' attempts to put him into handcuffs and force was necessary to control the situation. And the jury could have found that Debus did not use excessive force in the corner of the holding cell. Though Matthews testified that Debus punched and beat him, the jury could have believed Debus's testimony that he merely held Matthews in a position to control his movements without applying pressure. Based on the evidence presented at trial, these findings would have been reasonable.

If the jury made these or similar findings, it reasonably could have found that any quantifiable injuries that Matthews incurred at the jail were the result of a justifiable use of force. Though it is undisputed that Matthews's face was bleeding, the jury could have determined that the cuts that he incurred during his arrest reopened while the officers tried to handcuff him, which, as indicated, the jury could have found entailed a justifiable use of force. And though there is evidence that Matthews's knee was swollen, the jury

could have attributed that to, among other things, Janovyak's restraining of his legs in the holding cell, which the jury did not find to entail excessive force. The jury also could have found that the other injuries Matthews alleged—including headaches, dizziness, anxiety, and other psychological symptoms— were caused by the officers' justifiable uses of force and/or by the separate altercation during Matthews's arrest. These findings would have been reasonable based on the evidence at trial. Under the first *Briggs* situation, they would have been an appropriate basis for the jury to award only nominal damages. Therefore, the Court concludes that Matthews is not entitled to a new trial on the ground that the jury inappropriately awarded him nominal damages. Accordingly, the Court need not address whether the other *Briggs* situations apply in this case.

Citing *Bedenfield v. Shultz*, 272 F. Supp. 2d 753 (N.D. Ill. 2003), Matthews contends that the record does not suggest that the jury found that only one of Debus's acts constituted excessive force and that his other acts did not. The court in *Bedenfield* found that the first *Briggs* scenario did not apply where the jury returned a verdict finding that officers had engaged in excessive force, because "there was only one instance of force during the encounter," so "the jury could not have found that the officers used both justifiable and excessive force." *Id.* at 754. In this case, however, Debus used force on Matthews multiple times, and the jury reasonably could have found that Debus was justified in doing so at least some of those times.

As indicated, the proper question on a motion for a new trial is whether the verdict was "against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez*, 900 F.3d at 844. For the reasons described,

12

there was an appropriate basis on which the jury could have awarded only nominal damages, so the verdict was not against the manifest weight of the evidence or otherwise unfair to Matthews.

Matthews also contends that no evidence demonstrates that any justifiable use of force caused his injuries. But no evidence conclusively establishes the contrary proposition either. The jury reasonably could have found that the injuries that Matthews alleged resulted either from justifiable uses of force by the defendants or from the altercation that occurred during his arrest, which did not involve the defendants in this case. In short, there is no evidence from which the jury was required to conclude that use of excessive by Debus at the jail caused Matthews's injuries.

Finally, Matthews asserts that any injury caused by Debus's use of excessive force was the proximate cause of the other injuries he suffered. This misses the mark because it depends on a faulty assumption that Debus's use of excessive force was a cause of Matthews's injuries at all. As the Court has explained, the jury reasonably could have concluded otherwise.

For these reasons, the Court denies Matthews's motion for a new trial.

## B. Bills of costs

Both sides have moved to recover their costs. The defendants seek to recover $32,823.78. Matthews seeks to recover $26,307.17. "Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The parties dispute which party is the prevailing party that is entitled to recover costs, as well as the amount of costs that should be awarded.

### 1.    Entitlement to costs

The defendants argue that they are the prevailing parties because they prevailed on more claims than Matthews and the jury awarded Matthews only nominal damages. Matthews argues that he was the prevailing party against Debus and Will County because the claim on which he prevailed was "the most substantial liability issue in the case." Pl.'s Reply in Supp. of Bill of Costs at 2.[3]

"For the purposes of Rule 54, a party is deemed prevailing if it prevails as to a substantial part of the litigation," even if that party did not prevail on every clam. *Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017) (internal quotation marks omitted). "[I]n a case with mixed results," the district court has "especially broad discretion to award or deny costs." *Id.*

There is no question that this case ended up with a mixed result. The defendants prevailed on many of the claims, but Matthews prevailed on a key claim—excessive force—against Debus. Throughout this case, Matthews contended that the defendants used excessive force against him, and the defendants consistently maintained that they had not—and also, on significant aspects of the case, that they had not engaged in the intentional use of force at all. Both parties presented a considerable amount of testimony on the excessive force claim at trial, and it was a key issue that they disputed on summary judgment and with regard to Matthews's request for the Court to reconsider its decision on summary judgment.

---

[3] Matthews also contends that Janovyak and Prokop are not entitled to costs because they stipulated at trial that Will County indemnified them, so they did not incur costs personally. The Court disregards this contention because, in response, the defendants assert that any costs they recover will go to Will County and not to them individually.

14

The jury's finding in favor of Matthews against Debus vindicated his contentions regarding the use of excessive force to some extent. The case was not entirely about money; it was also about determining whether Matthews's constitutional rights had been violated. The jury concluded that they had, and it awarded him nominal damages. Given the centrality of the excessive force claim to the case, the Court concludes the excessive force claim against Debus was a substantial part of the litigation and that Matthews's success on that claim renders him the prevailing party. *See Moore v. Liszewski*, 838 F.3d 877, 879 (7th Cir. 2016) ("To prevail in litigation it's not enough for a plaintiff to persuade a judge or jury that his rights were violated if he has no damages, but the plaintiff may be deemed prevailing even if the only damages he obtains are nominal." (internal citations omitted)).

Even if the defendants were the prevailing parties, the Court would not award them costs. Courts may deny costs in "exceptional circumstances," *Overbeek v. Heimbecker*, 101 F.3d 1225, 1228 (7th Cir. 1996), in which the prevailing party's repeated misconduct "needlessly extended or delayed the litigation." *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 941 (N.D. Ill. 2015) (Kennelly, J.). For instance, the Seventh Circuit upheld the denial of costs when a prevailing party's repeated misconduct subjected the court and the opposing party to a "protracted and needless litigation." *Overbeek*, 101 F.3d at 1228. And a court in this district found that a reduction of costs was warranted when the court had "presided over 146 contested motions—mostly concerning discovery disputes—the vast majority of which were resolved in Plaintiffs' favor," and the defendants' attorneys "engaged in repeated obstreperous pretrial conduct" and "fail[ed] to comply with this Court's

discovery orders on multiple occasions." *Fairley v. Andrews*, No. 03 C 5207, 2008 WL 961592, at *3 (N.D. Ill. Apr. 8, 2008).

In this case, one can reasonably conclude that the defendants, up through the presentation of their summary judgment motion, attempted to paint a misleading picture of the events involving Matthews at the jail. On summary judgment, Debus studiously avoided saying anything in his affidavit about the incident in the holding cell, where he had unquestionably engaged in the deliberate use of force against Matthews. The other defendants likewise omitted any reference to Debus's leg sweep from their affidavits, attempting to paint the picture that Matthews had, on his own, lunged forward and had hit the wall only for that reason. In addition, all of the defendants told the Court, in sworn affidavits, stories about the nurse's station incident that were materially different from what they had previously told internal affairs investigators—all the while keeping their internal affairs statements from the Court. If the Court had completely adopted the defendants' contentions at that point, the case would have been over. The case remained alive only because video evidence showed what Debus had avoided admitting in his affidavit—that he had deliberately leg-swept Matthews in the holding cell.

Once the Court appointed counsel after denying summary judgment on the holding cell claim, the officers' previous statements to internal affairs came to light. And once Matthews's appointed counsel filed the motion for reconsideration, it became clear to the Court that the defendants had given statements about that aspect of the incident that contradicted their sworn statements to the Court—upon which the Court had relied—that taking Matthews down at the nurse's station had been unintentional on their part. Once the Court saw the full picture, it was apparent that Matthews's claim

16

involving the nurse's station incident had to go to trial as well.

The lion's share of the costs that the defendants claim involves discovery that was taken *after* the denial of summary judgment, once the Court had appointed counsel to represent Matthews. Defendants' own conduct—specifically, their attempt to present to the Court a misleading picture of their interactions with Matthews—was what occasioned most of the costs for which they now seek to recover. Because defendants' own conduct in this regard extended the litigation, it is appropriate to deny them recovery of their costs.[4]

## B.     Bill of costs

Courts may award specific litigation-related costs under 28 U.S.C. § 1920. The statute specifically enumerates certain costs that are taxable:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The party seeking costs has the burden of establishing that, where appropriate, the costs it incurred were reasonably necessary to the litigation. *See Nat'l*

---

[4] Even if defendants had established an entitlement to recover costs, the Court would decline to award costs due to Matthews's demonstrated indigency. He has been incarcerated continuously since the arrest that led to this case, and his scheduled parole release date is not until 2048, almost thirty years from now. He has submitted an affidavit establishing that he is currently unable to pay costs and does not have a paying job in prison. He has established that he is incapable of paying costs now or in the future. *See Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 893 (7th Cir. 2019); *Rivera v. City of Chicago*, 469 F.2d 631, 635 (7th Cir. 2006).

*Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014); *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008).  But, in this context, "necessary" does not mean "indispensabl[e]"; rather, the party seeking costs must simply show that costs were incurred for more than attorney preference or convenience.  *See Scheidler*, 750 F.3d at 698; *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000).

Matthews seeks to recover $26,307.17 in costs.  This figure includes the costs of fees for the service of summons and subpoena, transcripts, printing, witnesses, and exemplification.

The defendants contest Matthews's ability to recover costs for nine deposition transcripts.  They contend that these transcripts were unnecessary because, after the depositions, Matthews did not use them to try to prove his case.  They also assert that the testimony during those depositions was not useful because the persons whose depositions were taken either had limited interactions with Matthews at the jail and/or did not recall his physical condition.

Matthews replies that depositions were necessary.  Specifically, he contends that four of the at-issue depositions involved individuals who witnessed the officers' uses of force at the jail; two involved officers at the jail who had contact with Matthews after the defendants left the holding cell and may have observed his condition; one involved an officer who arrested Matthews and may have been able to describe Matthews's condition before he entered the jail; one involved an employee of the jail who saw Matthews, and may have observed his physical condition, before the officers allegedly used force; and one involved the county board member who allegedly initiated the internal investigation regarding the incident.

18

Neither party has submitted the at-issue transcripts to the Court, so the Court cannot assess these assertions via direct evidence. But the defendants do not dispute that, except for the county board member, each deponent from the at-issue depositions had at least some interaction with Matthews or opportunity to observe him during the relevant period, either at the jail or soon before he arrived there. That is enough to render the costs of these depositions necessary. One of the key questions on damages in this case was the nature and extent of Matthews's injuries before, during, and after his encounter with the defendants. Those who saw Matthews at those times were positioned to have personal knowledge about his injuries. This information was necessary for Matthews to develop his case, particularly because his counsel conducted these depositions after, as explained, the defendants had painted for the Court an incomplete picture about their interactions with him. The county board member's testimony was also necessary, particularly given the fact that, as explained, the defendants previously did not submit key materials about the internal investigation to the Court. The member was positioned to provide information about the investigation or, at least, the county's reasons for initiating it.

This conclusion is bolstered by the fact that five of the nine individuals, including the county board member, were listed as potential witnesses at trial. That serves to establish that the costs of deposition transcripts for those five potential witnesses were necessary to prepare for trial. *See Cooper v. City of Chicago*, No. 16 C 3519, 2018 WL 3970141, at *11 (N.D. Ill. Aug. 20, 2018).

For these reasons, the Court concludes that Matthews is entitled to the costs he seeks to recover for deposition transcripts. The defendants have not contested his bill

19

of costs on any other ground. Therefore, the Court awards the full amount that

Matthews seeks to recover to his counsel, whom the Court recruited to represent him.

This is appropriate because Matthews did not incur these expenses himself. *See, e.g.*,

Moore, 838 F.3d at 880.

## Conclusion

For the foregoing reasons, the Court denies Matthews's motion for a new trial

[dkt. no. 201]. The Court also declines to award costs to defendants [dkt. no. 207]. The

Court grants Matthews's motion to recover costs [dkt. no. 212] and awards his counsel

$26,307.17.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  September 6, 2020